UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LORI PATNODE AND STEVE PATNODE,<br><br>                    Plaintiffs,<br><br>         v.<br><br>HCC LIFE INSURANCE CO. DBA HCC MEDICAL INSURANCE SERVICES, LLC,<br><br>                    Defendant. | CASE NO. 2:15-00824-BJR<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT |

Plaintiffs Lori and Steve Patnode bring suit against Defendant HCC Life Insurance Co. (HCC), alleging breach of contract, breach of the duty of good faith, and violation of Washington's Consumer Protection Act (CPA).  Defendants move to dismiss the Complaint and, alternatively, for summary judgment.  Plaintiffs oppose both motions and request leave to amend the Complaint.  Because the Complaint adequately pleads breach of contract and breach of the duty of good faith, the Motion to Dismiss will be denied as to those counts.  The Court grants Plaintiffs leave to amend the Complaint with regard to the CPA claim.  Finally, because Plaintiffs have presented triable evidence on all counts, the Motion for Summary Judgment will be denied.

I.      Factual and Procedural Background

Plaintiff Lori Patnode ("Patnode") purchased a health insurance policy from Defendant HCC in September 2013.  See Decl. of Sergio Garciduenas-Sease ("SGS Decl."), Ex. A, Doc. No. 25-1. For the first six months, the policy excluded certain procedures, including cholecystectomy,

1

from coverage, "except on an emergency basis." Id. at 24–25. The policy also excluded coverage for complications related to non-covered procedures. Id. at 8. Patnode claims that she never experienced any medical symptoms related to her gallbladder until September 29, 2013, when she suffered severe intestinal pain, vomiting, and loss of feeling in her arms and legs. SGS Decl., Ex. H, Doc. No. 25-8, at 4. As a result, Patnode called an ambulance and was transported to Swedish Medical Center in Seattle. Compl., ¶¶ 3.3–3.4. She reported her symptoms to emergency room physicians, who performed a laparoscopic cholecystectomy. Id., ¶ 3.6. Following the procedure, on October 7, Patnode submitted a form to HCC outlining her claim for coverage of the surgery. Id., ¶ 3.10

On October 9, 2013, Patnode reported a several-hour episode of abdominal pain reminiscent of the pain she had experienced before the cholecystitis. SGS Decl., Ex. F., Doc. No. 25-6, at 2. That day, Dr. John Brandabur performed an endoscopic ultrasound, pancreatic stent placement, and other procedures related to the abdominal pain. Id. at 12. Patnode was discharged on October 10, 1013. Compl., ¶ 3.13

On October 23, 2015, Patnode submitted a form to HCC describing her claim for the care she had received on October 9th. Id., ¶ 3.15. HCC denied that claim on October 30th. Id., ¶ 3.17. HCC denied Patnode's claim related to the cholecystectomy on November 27th. Id., ¶ 3.19. Patnode appealed both decisions on April 23, 2014, and on June 11, 2014, those appeals were denied. Id., ¶¶ 3.27–3.28. Plaintiffs claim that they attempted to contact HCC several times between mid-June 2014 and March 2015 to no avail. Id., ¶¶ 3.30–3.32. On March 30, 2015, Patnode submitted a second-level appeal of the claim denial. Id., ¶¶ 3.36.

The medical bills resulting from Patnode's treatments amounted to $85,623. SGS Decl., Ex. T, Doc. No. 25-20. Plaintiffs claim that these bills were placed into collection, leading to a

2

judgment against them. As a result, Plaintiffs allege, Patnode's credit score dropped to 597, causing Patnode's application for an automobile loan to be denied. Id., Ex. W, Doc. No. 25-23. Patnode and her husband filed suit against HCC in state court on April 30, 2015. On May 26, 2015, HCC removed the case to federal court. Defendant filed this Motion for Dismissal and Summary Judgment on January 14, 2016.

II.  Legal Standard

Dismissal is appropriate when a plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss, the Court must accept the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. Taylor v. Yee, 780 F.3d 928, 935 (9th Cir. 2015). If, under any reasonable reading of the complaint, the plaintiff may be entitled to relief, a motion to dismiss will fail. See id. However, a complaint that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient. Bell Atlantic v. Twombly, 550 U.S. 550, 555 (2007). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citing Twombly, 550 U.S. at 557).

Under Rule 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. For a case to survive summary judgment, there must be a dispute over facts that are central to the outcome of the case, and the nonmoving party must have enough evidence to allow a reasonable jury to find in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this evaluation, the Court must resolve all factual disputes and draw all justifiable inferences in favor of the nonmoving party. Id. at 255. Sierra Club Inc. v. C.I.R., 86

3

F.3d 1526, 1536 (9th Cir. 1996). The nonmoving party, however, must present evidence upon which a reasonable jury could find in his favor; "the mere existence of a scintilla of evidence" is not sufficient to advance the case to trial. Liberty Lobby, 477 U.S. at 266.

III.     Discussion

Defendant moves to dismiss each of Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim. Alternatively, Defendant asks the Court to grant summary judgment, arguing that Plaintiffs have failed to present triable evidence in support of their claims.

A.     Breach of Contract

Plaintiffs allege that HCC breached its contract with Patnode when it refused to pay the claims associated with her cholecystectomy and related medical complications. See Compl., ¶ 4.1–4.2. Determination of whether an insurance policy covers a particular claim involves a two-step process. Moeller v. Farmers Ins. Co. of Washington, 267 P.3d 998, 1001 (Wash. 2011). First, the insured must demonstrate that "the loss falls within the scope of the policy's insured losses." Id. (quoting McDonald v. State Farm Fire & Cas. Co., 837 P.2d 1000, 1003 (Wash. 1992)). "Then, in order to avoid coverage, the insurer must 'show the loss is excluded by specific policy language.'" Id. Courts must give insurance contracts the kind of reasonable construction that would be given by an average person purchasing insurance. Quadrant Corp. v. Am. States Ins. Co., 110 P.3d 733, 737 (Wash. 2005). Because exclusions from insurance coverage "are contrary to the fundamental protective purpose of insurance," courts "will not extend them beyond their clear and unequivocal meaning." State Farm Fire & Cas. Co. v. Ham & Rye, L.L.C., 174 P.3d 1175, 1179 (Wash. 2007). Likewise, any exclusions are strictly construed against the insurer. Stuart v. Am. States Ins. Co., 953 P.2d 462, 464 (Wash. 1998).

However, courts may not create ambiguity where the language is clear. <u>Quadrant Corp.</u>, 110 P.3d at 737.

        1.  <u>Motion to Dismiss</u>

Defendant's Motion to Dismiss argues that the Complaint is insufficient because it fails to allege that the cholecystectomy was covered under the policy. The Complaint does, however, state that Patnode held an insurance policy with HCC and that HCC wrongfully denied her claim under that policy. Compl., ¶¶ 1.4, 4.2. Moreover, because the policy is referenced in the Complaint and its contents are not disputed, the Court may review the policy in consideration of the Motion to Dismiss. <u>See</u> <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2009). Because the allegations in the Complaint in concert with the language of the policy are sufficient to state a breach of contract claim, the Motion to Dismiss this claim will be denied.

        2.  <u>Motion for Summary Judgment</u>

In support of summary judgment, Defendant argues that Plaintiffs have failed to present trial-worthy evidence that the cholecystectomy was covered under the "emergency basis" provision of the contract. Plaintiffs' evidence that the surgery was an emergency includes a letter from Patnode's primary care physician, Dr. Jill Summerfield, stating that, prior to the gallbladder surgery, Summerfield had not treated Patnode for gallbladder or other gastrointestinal issues. SGS Decl., Ex. N, Doc No. 25-14. Plaintiffs have also provided medical records indicating that, immediately prior to the surgery, Patnode reported to emergency room personnel that she was experiencing cramping, abdominal pain, vomiting, rapid breathing, numbness in her hands and feet, and tingling and eventual loss of feeling in her arms and legs. SGS Decl., Ex. H, Doc No. 25-8. She also reported that the pain was so severe that it prevented her from standing up and that, when she lost feeling in her arms and legs, she called 911. <u>Id.</u>

Based on this evidence, a reasonable jury could conclude that the cholecystectomy was an emergency procedure. As such, there is a genuine dispute of fact regarding whether the procedure and expenses related to complications should have been covered under the policy. Defendants' motion for summary judgment on this claim will be denied.

### B. Breach of Duty of Good Faith

Washington law imposes on insurance companies a duty to deal in good faith with their insured. St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., 196 P.3d 664, 667–68 (2008). This duty "arises from a source akin to a fiduciary duty" and "permeates the insurance arrangement." Id. at 67. In order to establish a bad faith claim, a plaintiff must show that the breach was "unreasonable, frivolous, or unfounded." Id. (quoting Kirk v. Mt. Airy Ins. Co., 951 P.2d 1124 (1998)). An insurer who "acts with honesty, bases its decision on adequate information, and does not overemphasize its own interests" will not be liable for bad faith. Coventry Associates v. Am. States Ins. Co., 961 P.2d 933, 938 (Wash. 1998). "Whether an insurer acted in bad faith is a question of fact." Id. (quoting Smith v. Safeco Ins. Co., 78 P.3d 1274, 1274 (Wash. 2003)). However, if a reasonable jury could not find that the insurer's basis for denying the claim was unreasonable, the insurer is entitled to summary judgment. Smith, 78 P.3d 1274, 1277–78. Plaintiffs allege that HCC breached its duty of good faith by denying Pantode's claims for coverage.

#### 1. Motion to Dismiss

Defendants move to dismiss Plaintiffs' allegation of bad faith, arguing that Plaintiffs failed to specifically allege that HCC's denial of the claim unreasonable or to allege facts in support of that proposition. While the Complaint omits the term "unreasonable," the pleading standards set forth in Twombly and its progeny make clear that facts rather than "labels and

conclusions" are the focus of the inquiry on a motion to dismiss. See Twombly, 50 U.S. at 557. And Plaintiffs do allege that HCC failed to pay Patnode's claims even after multiple appeals, despite the emergency nature of the procedure. Compl., ¶¶ 3.6, 3.27–3.28, 3.36. Because these facts amount to a plausible claim for relief, Defendant's Motion to Dismiss Count the bad faith claim will be denied.

2.  Motion for Summary Judgment

In support of summary judgment, Defendant asserts that Plaintiffs have failed to produce evidence upon which a reasonable jury could find Defendant's denial of the claim unreasonable.[1] HCC asserts that it reasonably relied on the hospital's coding of the procedure as "urgent" rather than "emergency"—terms that HCC claims are terms of art within the medical community. Def.'s Mot. at 21–22. Plaintiffs, however, have presented documents showing that Patnode's claims and appeals were continually denied despite the fact that Plaintiff detailed the circumstances surrounding the procedure and provided verification from her primary care physician suggesting that the cholecystectomy was unexpected in light of Patnode's medical history. See SGS Decl., Ex. B., Doc. No. 25-2 at 12–13 & Ex. H, Doc. No. 25-8. A jury could conclude that, once HCC received clarification from both Patnode and her physician about the circumstances of the procedure, it was no longer entitled to rely on the hospital's coding of the procedure, and thus that HCC's continued denial of the claim was unreasonable. Because Plaintiffs have presented triable evidence in support of their bad faith claim, Defendant's Motion for Summary Judgment on this claim will be denied.

---

[1] In its Reply, Defendant moves to strike several declarations by Plaintiffs' experts as inadmissible. See Reply at 8–9. Because, aside from these declarations, Plaintiffs have offered sufficient evidence to survive summary judgment, the Court need not rule on the admissibility of this testimony at this stage in the proceedings.

### C. Consumer Protection Act Claim

Defendant moves for dismissal and summary judgment on Plaintiffs' CPA claim for failure to allege or prove facts establishing liability and compensable damages. To prove a violation of the CPA, a plaintiff must show "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation." See WPI 310.01; Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 537 (Wash. 1986). An insurer's breach of its duty of good faith constitutes a *per se* violation of the first three elements of a CPA claim. See Gingrich v. Unigard Sec. Ins. Co., 788 P.2d 1096, 1101 (Wash. App. 1990) (citing Salois v. Mutual of Omaha Ins. Co., 581 P.2d 1349 (Wash. 1978)). As provided in section III(B), *infra*, Plaintiffs have pled and presented triable evidence that Defendant breached its duty of good faith. Accordingly, Plaintiffs have presented enough evidence of these three elements to survive dismissal and summary judgment, and only the question of damages remains.

Only damages to business or property are compensable under the CPA. Panag v. Farmers Ins. Co. of Washington, 204 P.3d 885, 899 (Wash. 2009). "Personal injuries, as opposed to injuries to business or property, are not compensable and do not satisfy the injury requirement" of the CPA. Id. "The financial consequences of such personal injuries are also excluded. . . . Otherwise, however, the business and property injuries compensable under the CPA are relatively expansive." Frias v. Asset Foreclosure Servs., Inc., 334 P.3d 529, 538 (Wash. 2014) (internal quotations and citations omitted). "[T]he injury requirement is met upon proof the plaintiff's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." Panag, 204 P.3d at 899 (internal quotations and citations omitted). For instance, a plaintiff's expenses incurred in responding to

unlawful debt collection practices can suffice. Frias, 334 P.3d at 538 (citing Panag, 204 P.3d at 885). A plaintiff can also meet the injury requirement by alleging that a claim in collection as a result of an unfair business practice damaged his credit rating. See Panag, 204 P.3d at 899; see also 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 310.06 (6th ed.) (listing "difficulty in securing a loan or other credit" as establishing injury under CPA).

### 1. Motion to Dismiss and Plaintiffs' Motion to Amend Complaint

Defendant moves to dismiss Plaintiffs' CPA claim, arguing in part that Plaintiffs' allegations of damages are conclusory. Regarding damages, the Complaint alleges only that Plaintiffs "have suffered compensatory, special, and general damages." Compl., ¶ 7.1. The Complaint fails to allege any facts in support of Plaintiffs' damage claims. As such, under this Court's pleading standard, the Complaint fails to make out an adequate claim for damages under the CPA. See Twombly, 550 U.S. at 555. In their Opposition to Defendant's motion, however, Plaintiffs allege that Defendant's denial of the insurance claim led Patnode's medical bills to go into collection, thereby causing her credit score to plummet from a score of more than 800 to 597. Pls.' Opp. at 23. This lower score, Plaintiffs claim, caused Patnode to pay a higher interest rate on money borrowed to purchase a vehicle. Id. Plaintiffs request leave to amend the Complaint to incorporate these facts.

Federal Rule of Civil Procedure 15 allows a party to amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Under Rule 15, courts should grant leave to amend with "extreme liberality," unless the potential amendment would be futile. Mirmehdi v. United States, 689 F.3d 975, 985 (9th Cir. 2012). Under the logic of Panag, Plaintiffs' claims of a damaged credit rating and increased credit costs directly resulting from Defendant's nonpayment of the insurance claims would sufficiently allege injury

under the CPA.  See Panag, 204 P.3d at 899.  As such, Plaintiffs' request to amend the Complaint to incorporate these allegations will be granted, and the Motion to Dismiss will be denied.

### 2. Motion for Summary Judgment

Defendant also moves for summary judgment on Plaintiffs' CPA violation claim, pointing out that Plaintiffs rely primarily on a declaration by their attorney.  Rule 56 requires that declarations used to oppose a motion for summary judgment be made by a witness with personal knowledge, who is competent to testify.  Fed. R. Civ. P. 56(d).  In addition to the fact that Plaintiffs' counsel likely has no personal knowledge of the events to which he testified, it would clearly be improper under Washington ethical rules for Plaintiffs' attorney to serve as both counsel and a witness in this case.  See R.P.C. 3.7.  Setting aside Plaintiffs' counsel's imprudent decision to submit his own statement in the place of his clients', Plaintiffs have offered documentation in support of their claim for CPA damages.  This documentation includes correspondence from creditors, a judgment against the Plaintiffs, and a record of the decrease in Patnode's credit score.  See SGS Decl., Exs. P, R, S, T, V, W, Doc. Nos. 25-16, 25-18, 25-19, 25-20, 25-22, 25-23.  Based on these documents, a reasonable jury could believe that Defendant's actions caused harm to Patnode's credit score.  Although these documents cannot be admitted at trial through Plaintiffs' counsel, they could possibly be introduced through a proper witness.  As such, Plaintiff has presented sufficient evidence of damages under the CPA, and Defendant's motion for summary judgment on the CPA claim will be denied.

### D. Defendant's Claims Regarding Discovery

Throughout its motion, Defendant asserts that, under Rule 37, Plaintiffs should be precluded from using certain evidence to oppose summary judgment, because Plaintiffs failed to

disclose such information as part of their initial disclosures.  See Fed. R. Civ. Pr. 37(c)(1).  Defendant, however, filed this motion before the close of discovery in this case, and discovery is ongoing.  Moreover, the contested documents do not concern allegations of wrongdoing by Defendant, but rather simply evidence of damages, including medical bills and other information regarding Patnode's credit rating.  Defendant is now on notice of this evidence.  In order to render a decision on the merits, the Court deems it proper to consider this evidence.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. Defendant's Motion to Dismiss is DENIED.
2. Defendant's Motion for Summary Judgment is DENIED.
3. Plaintiffs' Motion to Amend the Complaint is GRANTED.   Plaintiffs have seven days from the date of this Order to file an amended complaint incorporating the additional facts alleged in their Opposition to the Defendant's Motion for Dismissal/Summary Judgment.
4. Plaintiffs' Second Motion for Relief from the Summary Judgment Deadline is DENIED AS MOOT.

DATED this 5th day of July, 2016.

*Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE